## Kirshner, Appellant, *v.* Philadelphia.

*Negligence—Municipalities—Sidewalks—Obvious defects—Failure to observe—Burden of proof—Contributory negligence.*

In an action by a pedestrian against a city to recover for personal injuries, sustained by stepping on an iron cover over a sewer inlet, judgment is properly entered for the defendant where it appeared that the accident occurred in broad daylight, that the plaintiff was familiar with the location and that he admitted that he had not looked at the inlet-cover as he stepped on it, and there was also evidence that the cover was tilted on one side, which the plaintiff could have seen if he had looked.

Argued October 13, 1920.    Appeal, No. 121, Oct. T., 1920, by plaintiff, from judgment of the Municipal Court of Philadelphia, July T., 1919, No. 55, for defendant non obstante veredicto in the case of Bruer Kirshner v. City of Philadelphia.    Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER and LINN, JJ.    Affirmed.

Trespass to recover damages for personal injuries. Before KNOWLES, J.

The facts are stated in the opinion of the Superior Court.

The jury rendered a verdict for the plaintiff for $1,-000. Subsequently the appellate division of the municipal court entered judgment for defendant non obstante veredicto. Plaintiff appealed.

*Error assigned,* among others, was the order of the court.

*Daniel G. Murphy,* of *Murphy & Levy,* for appellant.

*John C. Bell, Jr.,* Assistant City Solicitor, and with him *William M. Stewart, Jr.,* Assistant City Solicitor, and *David J. Smyth,* City Solicitor, for appellee.

OPINION BY LINN, J., December 10, 1920:

Appellant sued the city to recover for injury sustained while stepping up from the cartway of a street to the sidewalk. His description of the accident is, "I was going up the street to Greenway avenue and Alden, and walked across the street to Greenway avenue, and walked on the pavement, and when I went on top of the culvert I went down with it." By "culvert" he meant the iron cover over a sewer inlet. This cover formed part of the curb and sidewalk. The evidence in the case is very meagre; no description or dimensions of the inlet cover, or of the place generally, are given; there is neither photograph nor diagram. Defendant offered no evidence. The court below entered judgment for defendant non obstante veredicto upon the ground of plaintiff's contributory negligence. Appellant asks that we reverse and enter judgment on the verdict.

Though we apply the familiar rule requiring us to consider as established such facts as the jury would be justified in finding in plaintiff's favor from the evidence,

we cannot agree with appellant's contention that the case was for the jury. It was his duty to present a case clear of contributory negligence and he failed to do so. It appears that he lived near the place and had been familiar with it for some months. He was asked: "Q. When, if at all, had you last been over that sewer cover? A. I go by there every day." He never had observed "anything the matter with the culvert before." He also testified as follows: "Q. On the day on which you had the accident, just before you fell in it, did you look at the culvert? A. No, sir. Q. You did not look at it? A. No, sir." The accident happened about noon; he was accompanied by his son, who did not testify. He called two witnesses to describe the condition of the inlet cover before the accident. Mr. Marlin described it as it was a week before the accident, when, he said the inlet cover "was tilted off to one side; I saw it would trip somebody and I covered it up." He also testified, "After you put it back—after you straightened it up—are you able to say positively that if somebody had stepped on that cover it would have gone in with them? A. I would not say that— Q. In other words, you would not— A. I would not, because I didn't stand on it after I put the lid on it."

Mrs. Arnold testified to its condition two or three days before the accident. She was familiar with it for six years and passed it every day. Two or three days before the accident she said the cover "was loose; it didn't lay on perfectly tight"; "it was tilted—it was laid like catercornered; it wasn't laid perfectly straight"; "it was always slanty"; "it seemed to look very crooked."

We have then a case where a man, generally familiar with the place, who steps up from a cartway to a sidewalk on to an inlet cover, part of the sidewalk at the curb, about noon, with nothing to interfere with his vision, and who does not "look at the culvert" as he steps up and who, if he had looked, could not avoid see-

ing that the cover was "tilted," or "slanty," or "very crooked," or "too small for the opening."

Though in Hentz v. Somerset Borough, 2 Pa. Superior Ct. 225, the plaintiff was injured on a street crossing with which he was familiar, the following statement from the opinion of the court is not inapplicable here: "The reasonable care which the law exacts requires travelers on the footways of public streets to look where they are going; especially when they are about to step upon the crossing of an intersecting street, where they are bound to expect the continuity, if not the level of the pavement, to be broken: Robb v. Connellsville Boro., 137 Pa. 42. In Dehnhardt v. Phila., 15 W. N. C. 214, it was said, 'The condition of the pavement could have been seen if she had given attention to it......the duty of vigilance is as obligatory on the citizen as on the municipality.' In Phila. v. Smith, 23 W. N. C. 242, the Supreme Court held, 'that the plaintiff could not recover if there was negligence on her part in walking without seeing where she was going.'" See also Robb v. Connellsville Boro., 137 Pa. 42, 46; Lerner v. Phila., 221 Pa. 294; and Bean v. Phila, 260 Pa. 278.

The judgment is affirmed.